UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DUSTY STAMER,

    Petitioner,

v.                                  Case No. 8:08-cv-2152-T-23AEP

SECRETARY, Department of Corrections,

    Respondent.
                                        /

## **O R D E R**

Stamer petitions under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his conviction for aggravated battery, for which conviction Stamer serves twelve years.  Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 14)  The respondent admits the petition's timeliness.  (Response at 4 n.2, Doc. 14)

## **FACTS**[*]

The aggravated battery occurred during a drunken brawl between several high school buddies.  The victim, who was the oldest and largest teenager in the group, started the fight by "sucker punching" Stamer, who was one of the youngest in the group.  The victim pinned Stamer to the ground by kneeling on his shoulders and, while sitting atop him, punched Stamer in the face several times until another boy "broke a beer bottle over the" victim's head.  Several others joined in attacking the victim.  During

---

[*] This summary of the facts derives from Stamer's brief on direct appeal.  (Respondent's Exhibit 2)

the melee, Stamer "broke a beer bottle over the" back of the victim's head, kicked him in the teeth, and repeatedly kicked and hit the victim in the body and head. The victim sustained a fractured facial bone, lost three teeth, and required thirty-six stitches. The victim's blood-alcohol level was double the legal limit for driving.

## **STANDARD OF REVIEW**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a

>conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. at 694.  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 786-87 (2011). Accord Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). Federal courts must afford due deference to a state court's decision.  "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, ____ U.S.

- 3 -

____, 130 S. Ct. 1855, 1866 (2010). See also Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a per curiam decision without a written opinion the state appellate court affirmed Stamer's conviction and sentence on direct appeal. (Respondent's Exhibit 4) Similarly, in another per curiam decision without a written opinion the state appellate court affirmed the denial of Stamer's subsequent Rule 3.850 motion to vacate (Respondent's Exhibit 14), in which he alleged the ineffective assistance of trial counsel. Stamer's petition for the writ of habeas corpus, in which he alleged the ineffective assistance of appellate counsel, was denied by the state appellate court without a written opinion. (Respondent's Exhibit 24) The state appellate court's per curiam affirmances and the denial of habeas relief warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003). See also Richter, 131 S. Ct. at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court.

- 4 -

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

Pinholster, 131 S. Ct. at 1398.  Stamer bears the burden of overcoming a state court factual determination by clear and convincing evidence.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001).  The state court's rejection of Stamer's post-conviction claims warrants deference in this case.  ("Final Order Denying Defendant's Motion for Post-Conviction Relief," Respondent's Exhibit 10 at 80-82)

Stamer asserts two claims of ineffective assistance of counsel.  The first claim alleges the ineffective assistance of appellate counsel and the second alleges the ineffective assistance of trial counsel.  The grounds are more easily understood if addressed in reverse order.

## **INEFFECTIVE ASSISTANCE OF COUNSEL**

Stamer claims ineffective assistance of counsel, a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).

Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to Strickland, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S. Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Stamer must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92.  To meet this burden, Stamer must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91.  Stamer cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done.
> Nor is the test even what most good lawyers would have done.  We ask
> only whether some reasonable lawyer at the trial could have acted, in the
> circumstances, as defense counsel acted at trial . . . .  We are not
> interested in grading lawyers' performances; we are interested in whether
> the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting Burger v. Kemp, 483 U.S.

- 7 -

776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Stamer must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  In determining "reasonableness," a federal petition for the writ of habeas corpus authorizes an independent assessment of "whether the state habeas court was objectively reasonable in its Strickland inquiry" but not an independent assessment of whether counsel's actions were reasonable.  Putnam v. Head, 268 F.3d 1223, 1244 n.17 (11th Cir. 2001), cert. denied, 537 U.S. 870 (2002). Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  Richter, 131 S. Ct. at 788.  See also Pinholster, 131 S. Ct. at 1410 (A petitioner must overcome this "'doubly deferential' standard of Strickland and the AEDPA."), and Johnson v. Sec'y, Dep't of Corr., 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

The state court conducted an evidentiary hearing on Stamer's claim of ineffective assistance of trial counsel and denied the claim with the following introduction.

> [T]he defendant raises the claim of ineffective assistance of counsel. To successfully argue a claim of ineffective assistance of counsel, the defendant must prove that trial counsel's performance was deficient and that the deficiency caused the defendant to suffer prejudice. Strickland v. Washington, 466 U.S. 668 (1984). To satisfy the prejudice test the defendant must show that a reasonable probability exists that the outcome would have been different absent the ineffective assistance. Id.; Haliburton v. Singletary, 691 So. 2d 466 (Fla. 1997). The evaluation of an attorney's performance at the trial level requires a consideration of all the circumstances from the attorney's perspective at that time. Downs v. State, 453 So. 2d 1102, 1106-07 (Fla. 1984). The legal standard for such an evaluation is "reasonably effective counsel, not perfect or error-free counsel." Teffeteller v. Dugger, 734 So. 2d 1019, 1022 n.14 (Fla. 1999). There is a stronger presumption of reasonableness that must be overcome with any given ineffectiveness claim. Downs, 453 So. 2d at 1108.

(Respondent's Exhibit 10 at 80-81) Because the state court correctly recognized that Strickland governs each claim of ineffective assistance of counsel, Stamer cannot meet the "contrary to" test in Section 2254(d)(1). Stamer instead must show that the state court unreasonably applied Strickland or unreasonably determined the facts. The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

Ground Two:

The drunken melee and beating occurred in March, 1999. Voluntary intoxication was an available defense, but approximately six months later the voluntary intoxication defense was abolished by statute. Trial occurred three years after the incident. Trial counsel admitted during the state evidentiary hearing that his failure to recognize that voluntary intoxication was an available defense at Stamer's trial was clear error.

In ground two Stamer alleges that trial counsel rendered ineffective assistance by failing to (1) request the voluntary intoxication jury instruction and (2) investigate and present a voluntary intoxication defense. The respondent correctly argues that the

- 9 -

second claim is unexhausted and procedurally barred from federal review because Stamer failed to present the claim in the appropriate post-conviction proceeding.

A petitioner must present each claim to a state court before raising the claim in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995), quoting Picard v. Connor, 404 U.S. 270, 275 (1971). Accord Rose v. Lundy, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and Upshaw v. Singletary, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated."). Also, a petitioner must present to the federal court the same claim presented to the state court. Picard v. Connor, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). "Mere similarity of claims is insufficient to exhaust." Duncan v. Henry, 513 U.S. at 366.

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim. O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."). A petitioner requesting a federal court to issue a writ of habeas corpus must present each claim to the state courts in the procedurally correct manner. Upshaw v. Singletary,

70 F.3d at 579.  A petitioner must raise a claim of ineffective assistance of trial counsel in the Florida state courts in a motion to vacate under Rule 3.850, Florida Rule of Criminal Procedure.

Stamer's Rule 3.850 motion alleges several instances of ineffective assistance of trial counsel.  The motion (Respondent's Exhibit 10 at 19-20) specifically alleges that counsel failed to request the voluntary intoxication jury instruction (the first part of ground two in the federal petition) and not even a liberal interpretation will glean an allegation that trial counsel was ineffective for his "failure to investigate and present" a voluntary intoxication defense (the second part of ground two in the federal petition).  Stamer received the benefit of counsel at the evidentiary hearing on his motion to vacate, during which hearing post-conviction counsel specifically recognized that Stamer's pro se motion failed to challenge trial counsel's investigation and presentation shortcomings.  The record of the evidentiary hearing shows that both the court and post-conviction counsel considered the "failure to investigate and present" claim stronger than the jury instruction issue.  Nevertheless, Stamer refused to permit counsel to amend the motion to vacate to include the "failure to investigate and present" claim despite the post-conviction court's best efforts to explain the importance of the claim (Respondent's Exhibit 10 at 118-23):

> [Post-Conviction Counsel]:  For the record, I was spoken to by my client.  I informed him I could move at this time to try to amend, which would probably require the State to file a response.  I've talked to him in the past about that as well.  His position is he does not want to do that.  So I want to put that on the record so later on I won't be —
>
> The Court:  Sitting in [trial counsel]'s seat.  Is that right, Mr. Stamer?
>
> The Defendant:  That's right.

- 11 -

[Post-Conviction Counsel]:  We've had discussions about amending the petition?

The Defendant:  Yes, sir.

[Post-Conviction Counsel]:  You don't want to amend the petition?

The Defendant:  No, sir.

The Court:  I don't know if you and I are communicating, Mr. Stamer, but I understand what you're saying.  I'm not sure you understand what I'm saying. You know, you may have — and I've known [trial counsel] a long time, so I'm not trying to say anything bad about him.  Everybody does something they wish they'd taken back at one time or another.  I would be included in that, certainly.

But right now, I'm pretty much limiting . . . your attorney to exactly what's been alleged in [the motion to vacate].  And it would seem to be that one of his stronger points — I'm not ruling on this, but one of his stronger points, and I think he believes that to be the case too, and I really urge you to listen carefully on this, he's a good lawyer — is that [trial counsel], because the statutory change had been recent enough it maybe just escaped his notice that the time was not such that it had any effect on this case, that he may have made an error by not investigating the intoxication defense and having witnesses prepared, because the instruction wouldn't come in.

And I suspect the State's certainly well aware of this and may well argue it, that the instruction couldn't have come in under any circumstances because there was no evidence upon which to base it.  You just don't get [an instruction] because you'd like to have it.  You have to do it because there was some evidence upon which to base the instruction.  If the instruction was there and available and [trial counsel] didn't ask for it or investigate because he made a mistake about the effective date of the statute or anything along those lines, then that may be a good, strong argument for you.

Again, I'm not ruling on it.  I'm [not] saying what I would rule one way or the other . . . .  But there are two different arguments.  One is he was in error in not asking for the instruction, which he may or may not have been.  I don't know if there was evidence.  I haven't read this entire trial transcript, so I don't know if there was evidence of intoxication or not.  If there wasn't, then there isn't going to be any error for failing to ask for the instruction because — or at least there's an awfully good argument that there wasn't an error based on failing to ask for the instruction because there wasn't any evidence.

- 12 -

>So maybe the bottom line here is the failure to investigate and have witnesses available. And I suspect that's what [post-conviction counsel] has talked to you about previously and would very much like to try and amend to get that added in there. You still want him not to be able to do that?
>
>The Defendant: No, sir.
>
>The Court: All right. Okay. Well, [post-conviction counsel], you want to make your motion to amend at this point and we'll see how the State reacts to it?
>
>The Defendant: I don't want him to amend.
>
>The Court: Okay. I misunderstood you. I don't know how I can explain it any differently. I suspect [post-conviction counsel] has taken a better shot at it than I have.
>
>[Post-Conviction Counsel]: Judge, I understand the Court's ruling. I think even though we're not amending it, I think part and parcel of the effectiveness, it's just not the outer layers, the inner layers as well. That's why the State's making that argument that there's not enough [evidence to warrant the voluntary intoxication defense instruction] — they're saying it's not enough. I think when the Court reviews the transcript you'll see there is enough there that it should have been given.
>
>The Court: Well, and that may be the case . . . . I'm not ruling on that. I'm just suggesting what I suspect you suggested to your client. That is if you're going to throw rocks, the biggest and the most would be the best thing to start throwing rather than picking the smallest and the newest.
>
>[Post-Conviction Counsel]: And based on what the State had argued in their order to show cause, that's why I believe that's what they're going to argue here today. That's why I felt the safer ground was go back and amend and not have to defend that argument.
>
>The Court: Well, you and I are perfectly aligned on that. But your client gives you the marching orders and I've explained as well as I know how to explain it. I suspect you've done a much better job under much better circumstances, but that's — he doesn't want you to amend, then I guess you can't, and I can't consider whether or not I would allow it.
>
>So we'll charge ahead, leaving you with an argument that there was enough in the record to show that [the voluntary intoxication defense

- 13 -

> instruction] should have been given, in any event, and we'll leave alone the topic of whether or not [trial counsel] failed to properly investigate it.

Consequently, Stamer forfeited the "failure to investigate and present" claim by intentionally precluding post-conviction counsel from amending the Rule 3.850 motion to vacate. The "failure to investigate and present" claim asserted in part two of ground two is both unexhausted and procedurally barred from federal review.

Thereafter the post-conviction court reviewed the transcript of the trial to determine whether sufficient evidence was presented to warrant the voluntary intoxication defense jury instruction (part one of ground two) and concluded that insufficient evidence was presented to require the instruction (Respondent's Exhibit 10 at 81-82):

> In ground six, Defendant claims counsel was ineffective for not requesting an instruction on the defense of voluntary intoxication. In order for a voluntary intoxication instruction to be given to the jury there must be evidence presented at trial that the defendant was actually intoxicated. Evidence of alcohol consumption prior to the commission of a crime does not, by itself, mandate the giving of jury instructions with regard to voluntary intoxication. Linehan v. State, 476 So. 2d 1262 (Fla. 1985). Although defendant alleges he was intoxicated at the time of the offense, defendant only claims counsel was ineffective for failing to request a voluntary intoxication jury instruction.[1] [Trial counsel] testified at the hearing that he had overlooked the voluntary intoxication defense entirely and explained it may have been due to the time between the offense and the trial. Voluntary intoxication as a defense was abolished by Statute effective October 1, 1999. The date of offense was March of 1999, prior to the abolition of the defense, but the trial did not occur until March 28, 2002. Since a voluntary intoxication defense was not considered by trial counsel, defendant's intoxication was not a focal point of the trial. Based on defendant's claim, the court is limited to reviewing whether the evidence presented at trial warranted a jury instruction of voluntary intoxication. Based upon a review of defendant's argument at the evidentiary hearing and a review of the trial transcript, the court finds there was not sufficient evidence of defendant's intoxication to warrant the voluntary intoxication jury instruction. Counsel was not ineffective for failing to ask for the voluntary intoxication jury instruction where there was not sufficient

- 14 -

> evidence presented at trial to warrant such an instruction. This claim is denied.
>
> > [1] The court provided the defendant the opportunity to amend his motion to include a claim that counsel was ineffective for failing to bring forth a voluntary intoxication defense and, against the advice of counsel, defendant refused to amend the motion.

At trial Stamer had the burden of presenting evidence of his intoxication at the time of the offense. Apparently he believed the record contained sufficient evidence of his intoxication to warrant the voluntary intoxication defense jury instruction. The state post-conviction court disagreed. "Under Florida law, to prevail in using the voluntary intoxication defense, 'the defendant must come forward with evidence of intoxication at the time of the offense sufficient to establish that he was unable to form the intent necessary to commit the crime charged.'" Boehm v. Crosby, 146 Fed. App'x 422, 425 (11th Cir. 2005), quoting Linehan v. State, 476 So. 2d 1262, 1264 (Fla. 1985). Generally, a federal court is bound by a state court's interpretation of state law. See Mullaney v. Wilbur, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law. . . ."), Breedlove v. Moore, 279 F.3d 952, 963-64 (11th Cir. 2002) ("The Florida Supreme Court is the final arbiter of Florida evidentiary law; federal courts must respect that law absent a constitutional violation."), cert. denied, 538 U.S. 995 (2003), and McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir. 1992) ("State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases."), cert. denied, 507 U.S. 975 (1993). The state court held that trial counsel's performance was not deficient because

the record contains insufficient evidence to support the voluntary intoxication defense jury instruction. Stamer fails to show that the state court unreasonably applied Strickland in rejecting his claim of ineffective assistance of counsel.

Ground One:

Stamer was charged with attempted murder in the second degree. The jury received instructions for the charged offense and several lesser included offenses, including aggravated battery. The jury convicted Stamer of aggravated battery.

In ground one Stamer alleges that appellate counsel rendered ineffective assistance by failing to assert a claim of fundamental error based on the "forcible felony" self-defense instruction administered at his trial. Because trial counsel preserved no objection to the instruction, appellate counsel could assert the issue only if omitting the instruction was fundamental error. Stamer cites Giles v. State, 831 So. 2d 1263, 1264 (4th DCA 2002), which was issued a few weeks before Stamer's initial brief was filed on direct appeal and which held that "the wording of [the 'forcible-felony'] self-defense jury instruction was misleading." Stamer either misunderstands or misrepresents the holding in Giles. Contrary to Stamer's argument, Giles did not hold that giving the instruction is fundamental error. Contrary to Stamer's factual situation, Giles's trial counsel preserved an objection to the instruction, which objection negated the need for a fundamental error analysis. Although later state cases exist that question the propriety of the "forcible-felony" instruction, Giles was the only case extant when Stamer's appellate counsel filed his initial brief. Consequently, because Giles is easily distinguishable because the error was preserved, appellate counsel's performance was not deficient based on counsel's not presenting a fundamental error argument.

- 16 -

Additionally, Martinez v. State, 981 So. 2d 449, 457 (Fla. 2008) (italics original), specifically rejects Stamer's fundamental error argument.

> [T]he erroneous reading of th[e forcible-felony] instruction constitutes fundamental error *only when it deprives the defendant of a fair trial.* [W]e disapprove of those district court decisions which hold that an erroneous reading of the forcible-felony instruction always constitutes fundamental error.

Martinez concluded that because "the erroneous forcible-felony instruction did not deprive Martinez of a fair trial, . . . fundamental error did not occur." 981 So. 2d at 455. Stamer's post-conviction challenges never asserted the denial of a fair trial, and his claim relies on analysis that the Florida supreme court criticized as flawed. Consequently, Stamer fails to show that the state court unreasonably applied Strickland.

Accordingly, Stamer's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Stamer and close this case.

## **CERTIFICATE OF APPEALABILITY**

Rule 11(a), Rules Governing Section 2254 Cases, requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." As stated in Slack v. McDaniel, 529 U.S. 473, 483-84 (2000):

> To obtain a COA under § 2254(c), a petitioner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" Barefoot, supra, at 893, and n.4, 102 S. Ct. 3383 ("sum[ming] up" the "substantial showing" standard).
>
> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. This construction gives meaning to Congress' requirement that a prisoner demonstrate substantial underlying constitutional claims and is in conformity with the meaning of the "substantial showing" standard provided in Barefoot, supra, at 893, and n.4, 102 S. Ct. 3383 . . . .

An applicant need not show probable success on appeal, but the issuance of a certificate of appealability entails more than "mere good faith" or only the "absence of frivolity." As stated in Miller-El v. Cockrell, 537 U.S. 322, 338 (2003):

We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in Slack [v. McDaniel, 529 U.S. 473 (2000)], "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484, 120 S. Ct. 1595.

Stamer's petition for the writ of habeas corpus is denied on both the merits and procedural grounds. Because jurists of reason would not fairly debate either (a) whether the petition states a valid claim of the denial of a constitutional right or (b) whether the district court was correct in the procedural ruling, a certificate is unwarranted.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed in forma pauperis on appeal is **DENIED**. Stamer must pay the full $455 appellate filing fee without installments unless the circuit court allows Stamer to proceed in forma pauperis.

ORDERED in Tampa, Florida, on October 28, 2011.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE